BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE BOARD OF CORRECTIONS has requested an opinion on the following questions:
1. Is the Board of Corrections authorized to institute a legal action or impose sanctions against a local agency for a failure to bring a particular juvenile facility into compliance with the minimum standards established by the board?
2. When a local agency brings a particular juvenile facility into compliance with the minimum standards established by the Board of Corrections, is the state required to reimburse the local agency for the costs incurred in meeting the standards?
 CONCLUSIONS
1. The Board of Corrections is not authorized to institute a legal action or impose sanctions against a local agency for a failure to bring a particular juvenile facility into compliance with the minimum standards established by the board.
2. When a local agency brings a particular juvenile facility into compliance with the minimum standards established by the Board of Corrections, the state is not required to reimburse the local agency for the costs incurred in meeting the standards.
 ANALYSIS
The Board of Corrections ("Board") is established within the Youth and Adult Correctional Agency (Pen. Code, § 6024) and serves as "the means whereby the Department of Corrections and the Department of Youth Authority may correlate their individual programs for the adults and youths under the jurisdiction of each" (Pen. Code, § 6026). Among the Board's specific duties is the adoption of minimum standards for the operation and maintenance of juvenile facilities in which minors are confined. (Welf. Inst. Code, § 210)[1] We are asked to determine whether the Board has any enforcement powers with respect to the minimum standards which it sets for juvenile facilities and whether compliance with the standards by a local agency requires the state to reimburse the local agency for the costs incurred. We conclude that the Board has not been authorized to institute legal actions or impose sanctions to enforce its minimum standards and that the state is not required to reimburse local agencies for the costs associated with complying with the standards.
1. Authority to Enforce Minimum Standards
Section 210 states: "The Board of Corrections shall adopt minimum standards for the operation and maintenance of juvenile halls for the confinement of minors." Section 210.2
additionally requires the Board to establish standards for adult facilities used temporarily to house minors. The key statute requiring our interpretation is section 209, which provides:
 "(a) The judge of the juvenile court of a county, or, if there is more than one judge, any of the judges of the juvenile court shall, at least annually inspect any jail, juvenile hall, or special purpose juvenile hall that, in the preceding calendar year, was used for confinement, for more than 24 hours, of any minor.
 "The judge shall promptly notify the operator of the jail, juvenile hall, or special purpose juvenile hall of any observed noncompliance with minimum standards for juvenile facilities adopted by the Board of Corrections under Section 210. Based on the facility's subsequent compliance with the provisions of subdivisions (d) and (e), the judge shall thereafter make a finding whether the facility is a suitable place for the confinement of minors and shall note the finding in the minutes of the court.
 "The Board of Corrections shall conduct a biennial inspection of each jail, juvenile hall, lockup, or special purpose juvenile hall situated in this state that, during the preceding calendar year, was used for confinement, for more than 24 hours, of any minor. The board shall promptly notify the operator of any jail, juvenile hall, lockup, or special purpose juvenile hall of any noncompliance found, upon inspection, with any of the minimum standards for juvenile facilities adopted by the Board of Corrections under Section 210 or 210.2.
 "If either a judge of the juvenile court or the board, after inspection of a jail, juvenile hall, special purpose juvenile hall, or lockup, finds that it is not being operated and maintained as a suitable place for the confinement of minors, the juvenile court or the board shall give notice of its finding to all persons having authority to confine minors pursuant to this chapter and commencing 60 days thereafter the facility shall not be used for confinement of minors until the time the judge or board, as the case may be, finds, after reinspection of the facility that the conditions that rendered the facility unsuitable have been remedied, and the facility is a suitable place for confinement of minors.
 "The custodian of each jail, juvenile hall, special purpose juvenile hall, and lockup shall make any reports as may be requested by the board or the juvenile court to effectuate the purposes of this section.
 "(b) The Board of Corrections may inspect any law enforcement facility that contains a lockup for adults and that it has reason to believe may not be in compliance with the requirements of subdivision (d) of Section 207.1 or with the certification requirements or standards adopted under Section 210.2. A judge of the juvenile court shall conduct an annual inspection, either in person or through a delegated member of the appropriate county or regional juvenile justice commission, of any law enforcement facility that contains a lockup for adults which, in the preceding year, was used for the secure detention of any minor. If the law enforcement facility is observed, upon inspection, to be out of compliance with the requirements of subdivision (d) of Section 207.1, or with any standard adopted under Section 210.2, the board or the judge shall promptly notify the operator of the law enforcement facility of the specific points of noncompliance.
 "If either the judge or the board finds after inspection that the facility is not being operated and maintained in conformity with the requirements of subdivision (d) of Section 207.1
or with the certification requirements or standards adopted under Section 210.2, the juvenile court or the board shall give notice of its finding to all persons having authority to securely detain minors in the facility, and, commencing 60 days thereafter, the facility shall not be used for the secure detention of a minor until the time the judge or the board, as the case may be, finds, after reinspection, that the conditions that rendered the facility unsuitable have been remedied, and the facility is a suitable place for the confinement of minors in conformity with all requirements of law.
 "The custodian of each law enforcement facility that contains a lockup for adults shall make any report as may be requested by the board or by the juvenile court to effectuate the purposes of this subdivision.
 "(c) The board shall collect biennial data on the number, place, and duration of confinements of minors in jails and lockups, as defined in subdivision (i) of Section 207.1, and shall publish biennially this information in the form as it deems appropriate for the purpose of providing public information on continuing compliance with the requirements of Section 207.1.
 "(d) Except as provided in subdivision (e), a juvenile hall, special purpose juvenile hall, law enforcement facility, or jail shall be unsuitable for the confinement of minors if it is not in compliance with one or more of the minimum standards for juvenile facilities adopted by the Board of Corrections under Section 210 or 210.2, and if, within 60 days of having received notice of noncompliance from the board or the judge of the juvenile court, the juvenile hall, special purpose juvenile hall, law enforcement facility, or jail has failed to file an approved corrective action plan with the Board of Corrections to correct the condition or conditions of noncompliance of which it has been notified. The corrective action plan shall outline how the juvenile hall, special purpose juvenile hall, law enforcement facility, or jail plans to correct the issue of noncompliance and give a reasonable timeframe, not to exceed 90 days, for resolution, that the board shall either approve or deny. In the event the juvenile hall, special purpose juvenile hall, law enforcement facility, or jail fails to meet its commitment to resolve noncompliance issues outlined in its corrective action plan, the board shall make a determination of suitability at its next scheduled meeting.
 "(e) Where a juvenile hall is not in compliance with one or more of the minimum standards for juvenile facilities adopted by the Board of Corrections under Section 210, and where the noncompliance arises from sustained occupancy levels that are above the population capacity permitted by applicable minimum standards, the juvenile hall shall be unsuitable for the confinement of minors if the board or the judge of the juvenile court determines that conditions in the facility pose a serious risk to the health, safety, or welfare of minors confined in the facility. In making its determination of suitability, the board or the judge of the juvenile court shall consider, in addition to the noncompliance with minimum standards, the totality of conditions in the juvenile hall, including the extent and duration of overpopulation as well as staffing, program, physical plant, and medical and mental health care conditions in the facility. The Board of Corrections may develop guidelines and procedures for its determination of suitability in accordance with this subdivision and to assist counties in bringing their juvenile halls into full compliance with applicable minimum standards. This subdivision shall not be interpreted to exempt a juvenile hall from having to correct, in accordance with the provisions of subdivision (d), any minimum standard violations that are not directly related to overpopulation of the facility."[2]
In analyzing the terms of section 209 and related provisions of the statutory scheme, we rely upon well established principles of statutory interpretation. "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999)21 Cal.4th 973, 977.) "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]" (People v. Valladoli (1996)13 Cal.4th 590, 597; accord, California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633.) It is a "cardinal rule that a statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1097.)
Applying these principles to the Board's statutorily prescribed duties, we find that the Legislature has been highly specific in defining the responsibilities of the Board. It is to adopt minimum standards for facilities housing juveniles. (§§ 210,210.2.) A judge is to inspect these facilities each year. (§ 209, subd. (a).) The judge is to notify the operator of any facility not in compliance with the Board's minimum standards. (Ibid.) In addition, the Board is to inspect each facility every two years and must also notify the operator of any facility not in compliance with its minimum standards. (Ibid.) If the facility is thereafter found not to be "a suitable place for the confinement of minors," the juvenile court or the Board is required to "give notice of its findings to all persons having authority to confine minors. . . ." (Ibid.) Sixty days after such notification, "the facility shall not be used for confinement of minors" until "the facility is a suitable place. . . ." (Ibid.)
Accordingly, after the Board sets the minimum standards (§§210, 210.2), section209 imposes upon the Board the duties of (1) inspecting the facilities every other year, (2) providing notification to the operator of any facility found not to be in compliance with the standards, and (3) providing notification to persons having authority to confine minors of any finding of unsuitability. No other enforcement duties are specified in section 209 or any other statute. We are not at liberty to add, in the guise of statutory interpretation, the additional enforcement remedies of filing a legal action or imposing sanctions against public officials responsible for operating a particular juvenile facility in violation of section209.
Justifiably, the Legislature may anticipate that local public officials will obey the law by not housing minors in a particular juvenile facility found unsuitable by a judge or the Board. (See City of Beaumont v. Beaumont Irr. Dist. (1965) 63 Cal.2d 291, 297 ["There is a statutory presumption that officials will comply with the law"]; Erven v. Board of Supervisors (1975) 53 Cal.App.3d 1004, 1012 ["It may be presumed that the Board will comply with the law"]; San Bernardino County Flood Etc. Dist. v. Superior Court (1969) 269 Cal.App.2d 514, 521 ["It must be presumed that the board of supervisors of the Flood Control District will perform its official duties"].)
This is particularly true here since both the Legislature and public officials are aware that the failure to comply with the terms of section209 may subject the public officials to criminal prosecution. Government Code section 1222 states:
 "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor."
We have examined the application of Government Code section 1222 in a number of situations (see, e.g., 82 Ops.Cal.Atty.Gen. 246, 248 (1999); 82 Ops.Cal.Atty.Gen. 6, 10, fn. 4 (1999); 80 Ops.Cal.Atty.Gen. 36, 39-40 (1997); 76 Ops.Cal.Atty.Gen. 289, 292-293 (1993), as have the courts (see, e.g., Centinela Hospital Assn. v. City of Inglewood (1990)225 Cal.App.3d 1586, 1598; Griffis v. County of Mono (1985)163 Cal.App.3d 414, 427, fn. 15; Griswald v. Mt. Diablo Unified Sch. Dist. (1976) 63 Cal.App.3d 648, 656-658; Adler v. City Council (1960)184 Cal.App.2d 763, 774-774; see also Boags v. Municipal Court (1987)197 Cal.App.3d 65). A willful omission to remove minors from a place found unsuitable by a judge or the Board in violation of section209 may give rise to an application of Government Code section 1222.
Public officials who refuse to comply with the terms of section209 may also be subject to removal from office. (See Gov. Code, §§ 1770, subd. (h) [An office becomes vacant upon "[h]is or her conviction . . . of any offense involving a violation of his or her official duties"], 3060-3074 [conviction of "willful or corrupt misconduct in office" removes the person from office]; Lubin v. Wilson (1991) 232 Cal.App.3d 1422, 1427; People v. Hawes (1982)129 Cal.App.3d 930, 938-939; People v. Tice (1956) 144 Cal.App.2d 750,754; 82 Ops.Cal.Atty.Gen., supra, at p. 10, fn. 4; 80 Ops.Cal.Atty.Gen., supra, at pp. 40-41; 76 Ops.Cal.Atty.Gen., supra, at p. 291; 75 Ops.Cal.Atty.Gen. 64, 66-67 (1992).)
Under these circumstances, the Legislature may reasonably believe that giving the Board additional enforcement powers with respect to its minimum standards for juvenile facilities would be unnecessary. Of course, if the Legislature determines that the Board should institute legal proceedings and impose sanctions in appropriate circumstances, it may easily so authorize. (See, e.g., State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 1082 ["Had the Legislature intended to limit the exception . . . it could have done so in express terms"].)
Finally, we note that in 63 Ops.Cal.Atty.Gen. 227 (1980), we were presented with a similar question regarding the Board's authority to enforce minimum standards for adult local detention facilities. We stated in part:
 ". . . There is nothing in the statutes that gives the board authority to sue to compel compliance with those standards, even if the failing in a particular facility is life-threatening. A public agency, such as the board, which has been created by the Legislature may exercise only such powers which have been expressly granted to it or which may be fairly implied from such granted powers. [Citations.] No such authority has been granted to the board herein, nor may such be implied from its powers. Instead, the Legislature has left compliance with the standards to persuasion through the filing of reports of inspection or through the coercion of withholding reimbursement for detention of alleged parole violators under section 4016.5. . . ." (Id., at p. 231.)
Here, we believe that the public officials charged with housing minors in a juvenile facility will act to avoid violating the terms of section209. The consequences of refusing to obey the law may be severe.
We conclude in answer to the first question that the Board is not authorized to institute a legal action or impose sanctions against a local agency for a failure to bring a particular juvenile facility into compliance with the minimum standards established by the Board.
2. State Mandated Local Costs
Section 6 of article XIII B of the Constitution provides:
 "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates:
 "(a) Legislative mandates requested by the local agency affected;
 "(b) Legislation defining a new crime or changing an existing definition of a crime; or
 "(c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975."
Government Code section 17561 implements this constitutional requirement by providing: "The state shall reimburse each local agency and school district for all `costs mandated by the state,' as defined in section 17514." Government Code section 17514 defines reimbursable costs as "any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution."
The constitutional subvention requirement applies to state mandated increases in services provided by local agencies in existing programs. (Los Angeles v. California (1987) 43 Cal.3d 46, 56.) Covered programs are those that "carry out the governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (Ibid.) As used in section 6 of Article XIII B of the Constitution, the term "mandate" applies to agency regulations as well as statutory requirements. (Long Beach Unified School Dist. v. California (1990) 225 Cal.App.3d 155, 175.)
Here, we do not have a "new program" being imposed by the Legislature upon local governments. Counties have been required to maintain a "suitable" place for the detention of minors since at least 1915. (See § 850; Stats. 1961, ch. 1616, § 2; Stats. 1945, ch. 967, § 2; Stats. 1915, ch. 631, § 22.) Setting the minimum standards for what is "suitable" does not create a "higher" level of service — it has long been the level of service required of local agencies. (See also Inmates of the Riverside County Jail v. Clark (1983) 144 Cal.App.3d 850,860-861 [minimum standards set by Board for local detention facilities reflect constitutional requirements].)
In County of Los Angeles v. Department of Industrial Relations (1989)214 Cal.App.3d 1538, the court rejected an argument that the state was required to reimburse local governments for the costs incurred in meeting new elevator earthquake and fire safety regulations promulgated by the California Occupational Safety and Health Administration. The court noted in part: "The regulations at issue do not mandate elevator service; they simply establish safety measures." (Id., at p. 1546.)
In 63 Ops.Cal.Atty.Gen. 700 (1980), we concluded that the state was not required to reimburse local agencies for the costs of adding municipal court judges as directed by the Legislature. In finding that the additional judges did not constitute a "new" program or a "higher" level of service, we stated:
 ". . . Providing for an adequate number of judges for the most important court in the state in terms of the numbers of citizens it serves, in order that it may continue effectively to function as a forum for the orderly settlement of civil disputes and the prosecution of the floodtide of petty crime. (cf. Board of Supervisors v. Krumm (1976) 62 Cal.App.3d 935, 946), in accordance with the standard of justice prescribed by the constitution and laws of this state and of the United States, is a preexisting constitutional imperative. It is that standard, as distinguished from the number of personnel, to which the `level of service' relates. Thus, a `standard' has been defined in part as `a definite level or degree of quality that is proper and adequate for a specific purpose.' (Webster's Third New Internat. Dict. (1961) p. 2233.) Hence, in our view, an increase in the number of judges does not portend the imposition by the Legislature of any new or increased obligation, but the maintenance of preordained constitutional standards." (Id. at pp. 702-703, fn. omitted.)
The minimum standards set by the Board for juvenile facilities constitute objective criteria which are needed to ensure that the facilities remain suitable places for the confinement of minors. The standards do not create a new program or impose a higher level of service for local agencies. What has long been required of local agencies is the maintenance of "suitable" facilities to house detained minors.
In answer to the second question presented, we conclude that when a local agency brings a particular juvenile facility into compliance with the minimum standards established by the Board, the state is not required to reimburse the local agency for the costs incurred in meeting the standards.
[1] All references hereafter to the Welfare and Institutions Code are by section number only.
[2] Subdivision (d) of section 207.1 authorizes the temporary confinement of certain minors in an adult facility under specified conditions.